May it please the Court, the standard review for this case is D-NOVO, and this is a case involving DPPA violations. It may be useful to discuss briefly the role of policy in State law here as background. So the policy is the ERIC contract, which is attached to the amended complaint R-DOC-7, Exhibit 1-2, Exhibit B. And there, there are 11 pieces of information which are transferred to the third party ERIC. I'll just say 1 through 11, but it's important to note that that's done for registered voters and unregistered persons. Then the State law involved is 201.13, Subpart 3D, a reference to the amended complaint, Paragraph 48. And there, just an ordinary reading of that statute indicates that only 1 through 6 are authorized to be transferred to ERIC, and then only for registered voters. So name, date of birth, address, driver's license, last form of Social Security, the date the individual's record was last updated. So what's the complaint about? Well, if that's true, that the statutes only authorize the transfer of 1 through 6 for registered voters, then we have citizenship information, type of citizenship document, phone numbers, e-mails, or electronic communication info being transferred to ERIC when it's not authorized by State law and prohibited by the DPPA. And on the other hand, we have unregistered persons, and under ordinary reading of that statute, the unregistered person's information shouldn't be transferred at all, 1 through 11. So this is, again, background for the statute interpretation questions. Thank you for your patience. So then the issue is when you have a policy, a contract, the State is arguing is consistent with the statute. When it isn't, that's one type of legal unauthorization problem or ultra vires problem. The second one would be if the statute they're relying on is federally preempted. So that would be a second type of legal unauthorization ultra vires problem. So then when we go to the issue of interpreting the DPPA, particularly 18 U.S.C. 2724 cause of action, it authorizes a lawsuit against a person, and person is defined as an individual, anti-organization, but not the State or a State agency. So what did Congress intend? And so in Seminole Tribe of Florida, a very important case, in note 17, this is in the majority opinion, the U.S. Supreme Court said Congress can authorize federal jurisdiction under Ex Parte Young over a cause of action with a limited remedial scheme. Now, in that case, the Indian Gaming Regulatory Act, as the Court may know, has a very complex remedial scheme. Here it's very skinny. In 2723, there's one provision saying the Attorney General can sue a State agency, Department of Motor, for violating the DPPA. So that one remedial provision applies to a State agency that we didn't sue. And what Congress did was have that remedial provision and then had a broad private cause of action. Now, I understand the Court's going to say, okay, Mr. Cardall, how do we understand the word State and State agency being excluded from 18 U.S.C. 2724? But you can only understand that question by understanding the two types of ultraviaries I already described. The first type of ultraviaries, legally unauthorized activity by the Secretary of State, is they've gone well beyond the statutory provisions in 201.13 and 171.12 by disclosing any information about unregistered persons and then disclosing the additional information I mentioned, citizenship information, phone number, e-mail, so forth, for the registered voters. That's one type. The second type would be the type I described, is that if the Secretary of State is correctly interpreting the statutes, which I don't think is possible, but let's just say for a moment, then that statute would be federally preempted because it violates the DPPA. You can't have a statute authorizing disclosure of information that's being prohibited to be transferred or disclosed by there. In fact, in Section 171.12, Minnesota Statute Subdivision 7, Subpart A, it's a little tricky, the next Subdivision 7A, so I want to be very clear, Subdivision 7, Subpart A, data on individuals provided to obtain a driver's license or a Minnesota identification card shall be treated as provided by the United States Code, Title 18, Section 2721, as an effect, and so forth. So the DPPA is incorporated in state law, and here's the sentence they rely on in the same statute, Subdivision 7A, Part B. The commissioner must disclose personal information to the Secretary of State for the purpose of increasing voter registration and proving the accuracy of voter registration records in a statewide voter registration system. Well, that's not authorizing disclosure of information regarding unregistered persons, and not with respect to the additional information for registered persons. In fact, the same statute I'm reading is referenced in 201.13 and just lists the six types of data. So to understand 2724 is to understand how the government of Minnesota, here the Secretary of State and Deputy Secretary of State, have acted in legally unauthorized ways. And once we see, okay, Congress in 1994 enacted this law before the 1996 Seminole Tribe of Florida decision, that the court has to do a reading. The court really does need to read 2724 and see that Congress intended that individuals, including the two individuals sued here, the Secretary of State and Deputy Secretary of State, can be sued for preliminary and equitable relief. It's in 2724. It says you can sue individuals for preliminary and equitable relief. So here's the court, and what have I done? I've sued individuals for preliminary and equitable relief, and these are persons we've sued. And so one could say, well, Congress — When you sue them in their official capacity, you're effectively suing the State, right? And that's prohibited by the statute. That's why I did the preparatory work? Okay. So the idea would be you're right, that if a sovereign — Is there an ultra viris exception then? So if the State enacted a law that said we're not going to file the DPPA. Okay, but that's not this case. I could go through the statutes again. In fact, the law is incorporated in the State law, and they're very careful about, hey, the only information that should be distributed is basically the voter registration information for registered voters. It's available in the statewide voter registration system database. So are you alleging that the defendant's conduct here violates State law, and is that the basis of your individual capacity actions? Or I'm trying to put the pieces together here. Well, no, that's a good point because of the way I introduced it. So the DPPA protects all 11 types of information in the air contract. And so none of it should be distributed under the DPPA to the third party. But are you alleging a violation of State law by the individual capacity defendants? We are arguing that they have interpreted the State law incorrectly, resulting in them doing legally unauthorized disclosures of the DPPA. So they're violating Federal law. Isn't that essentially an official capacity claim against these individuals? You're saying the State policy is incomplete? Or am I misunderstanding? You're losing me here a little bit. Okay, this comes up quite a bit when you're talking about policy and custom, but it's unique in the sense that their policy reference in the air contract authorizes all these disclosures that are violative under the DPPA. Under the DPPA. They claim that the State law authorizes those disclosures. I believe they're interpreting the State law incorrectly, as I laid out at the beginning of my argument. But if they're doing it correctly, which I don't think is the case, that would be preempted, too, and lead to the interesting question that I received from Judge Grunder. But here they're interpreting it incorrectly. Neither the State or the Federal law authorizes the disclosures we're complaining about. So if neither the State law or the Federal law authorizes the disclosures we're complaining about, and then we have these basically rogue individuals who are engaged in this contract, this policy, and all I need to show is the people I'm suing are connected to the implementation of the illegal policy, and they are connected. They're the leaders of this department. And so with respect to the merits arguments, many of the merits arguments that we cover are based in these themes. But it may be easier just to decide the case that, look, you don't have authority under State law to do what you're doing, and what you're doing violates the disclosure rules in the DPPA. But if the Court were to review, and it's very clever of the defendants to say, well, this is a government function, but their government function, according to the scope of information disclosing, isn't covered by the State law they're claiming. So it couldn't be a government function. Then they point to the contract and say, well, the contract's the government function. Well, wait a minute. The contract's the policy, and it's not consistent with the State law. In fact, it's not authorized by the State law. But, again, we have included many arguments regarding how this is not a government function because disclosing this type of information is preempted by Federal law. This would include laws such as the 52 U.S.C. 2103 under HAVA, the non-discrimination requirement, that you can't use SBRS data and give it to one party, this Delaware Nonprofit Corporation, Electronic Research Information Center, and not give it to another party like Minnesota Voter Alliance, who was told by the Minnesota Supreme Court that the Secretary of State could determine who gets voter information under Minnesota law and who doesn't. Also, even if they have a benign motive for favoring this one nonprofit with this highly valuable information, as indicated in the amicus brief, Ferguson v. Charleston says these kind of partnerships, benign motives don't excuse such discrimination. Also, Eric, essentially with the State, runs a voter registration drive through the EBU mailer. Mr. Becker, the founder of Eric, said this is the greatest voter registration drive in the history of the United States. But there's no DPPA exception for voter registration drives. So, again, the Secretary of State and Deputy Secretary of State can run a voter registration drive, but they can't use private driver data and disclose to third parties to run a voter registration drive. 52 U.S.C. Section 21-083-5Bi says that HAVA allows, HAVA, the 2002 law following the DPA 1984 law, allows the use of driver data by the Secretary of State to the extent needed to verify accuracy of information in a voter registration application. Well, this use is far beyond that exception. So, again, it would be preempted. Also, the yield is very surprising that there's 4.1 million disclosures of voter register records and unregistered person records monthly, but only 8,000 EBUs go out. So that's a 0.002 return. So it looks like what's really important to Eric is having the driver's license numbers and Social Security numbers for all of us. It's highly valuable for political purposes, identifying people, solving the John Smith, Joe Smith, or Jane Smith issue. Basically, it's unnecessary to share the unregistered person's driver data with Eric to obtain the eligible but unregistered objective because they have the data already and they could just mail to them to register to vote. I'll rest on the brief for the rest of the argument and save the rest of my time for rebuttal. Thank you. Thank you for your argument. Mr. Hartshorn, we'll hear from you. Good morning, Your Honors. My name is Nathan Hartshorn. I'm an Assistant Attorney General. With me today is Assistant Attorney General Alan Barr. We represent the Appalese in this matter. The district court dismissed this action for lack of jurisdiction, and we're here to ask the court to affirm that dismissal. The central problem that Appalese, that appellants have here, is that the DPPA explicitly provides that it does not create a private right of action to sue states or their agencies. So the entire discussion on jurisdiction consists of appellants' attempts to end run that exclusion in the DPPA. The district court's decision in large part just goes down the list of appellants' and explains why each end run around the exclusion doesn't work. The two main theories appellants have here are Ex Parte Young and then these supposed individual capacity claims. So I'd like to take each one of those in turn. First, every court to examine this question has determined that Ex Parte Young claims are not available under the DPPA because Congress has provided a different mechanism for addressing violations by states, and that's through the U.S. Department of Justice. So the DPPA contains what one might call a detailed remedial scheme for the enforcement against a state of a statutorily created right. And the Supreme Court held in the Seminole Tribe case that when Congress creates that kind of scheme, Ex Parte Young claims are inappropriate. What's the detailed scheme, 2723B? Yes, 2723B, which authorizes DOJ claims against state governments that violate the DPPA. That's correct, yes. What about the 11th Circuit case, the Collier case? Doesn't that seem to suggest that it's not, you know, a comprehensive remedial scheme? Well, the Collier case was not examining Ex Parte Young at all. There's no mention of Ex Parte Young there. That was entirely an individual capacity claim case. It was also involved in 1983, which we don't have here at all. And I think the major distinction between that case and this case is in that case, at least according to the 11th Circuit's decision, the allegation was that the defendants in that case individually sold the plaintiff's data. There is no allegation of anything like that in this case. What the 11th Circuit describes in that case is that the defendants in their individual capacities sold the plaintiff's data. We don't have that here. And in that case, we didn't have, or they didn't have, Ex Parte Young theory, an Ex Parte Young jurisdictional theory. What do you mean when you say it was an individual capacity claim, not an Ex Parte Young claim? Is it an Ex Parte Young claim against the officer individually? Right, but, but. As individual capacity? Yeah, Ex Parte, but Ex Parte Young is an exception to what Judge Grunder mentioned to counsel previously, which is that when you, when you sue, when you sue a State official, you are suing that, the State agency or the State. And Ex Parte Young is, then provides an explanation or a reason why, under certain circumstances, that doesn't violate the State's sovereign immunity. So Ex Parte Young, then there are certain criteria for when that can apply or not. None of that was, was at issue at all in, in the Collier case. Collier, the Collier was based on the idea that those, that those officials acting on their own prerogative, that, that acting in their individual capacity had, had sold that data. And that was what was at, what was. You mean they were acting ultra-virus, or they were outside? That, that was the allegation in that case, yes. And I, I do have some things to say about counsel's idea that this, that this case is about ultra-virus with regard to State law, which I think is neither, is neither alleged in the complaint, nor is it correct. But I want to get through the jurisdictional theories first. Every court to examine a DPPA case like this has applied seminal tribe and determined that, no, Congress explained how it wants the statute to be enforced against State agencies, and Ex Parte Young claims are not it. Then there are, in this case, the individual capacity claims. Those here have two problems. The first problem is that appellant's attempts at individual claims fail the Twombly test. The amended complaint here sprinkles the term individually around in a few places, but there is actually only one sentence in one paragraph that actually alleges that either appellee himself has done anything that's even allegedly unlawful. That's paragraph 220 of the amended complaint. It alleges that these two men broke the law by, quote, approving or implementing contracts, unquote, between the Secretary of State's office and Eric. Well, approving and implementing contracts are not acts that are barred by the DPPA. I can imagine a story you could tell that begins with implementing a contract and ends with disclosing information to Eric. But under Twombly, it's the appellant's obligation to tell that story in the complaint rather than just throw up some vague verbs, and those are vague verbs, and let the Court figure out how to connect the premise to the conclusion. The complaint — If the allegation did state a claim, why wouldn't that be an ex parte young claim? For the reasons that the Seminole Tribe — that the Seminole Tribe Court announced, that ex parte young claims are not appropriate under these circumstances. I understand your argument that ex parte young claims are not appropriate. Yes. But why are you saying that this is not an ex parte young claim? This claim against Simon and Meda, is it? Yes. It alleges that they did something wrong. You seem to be saying if they had pleaded it adequately under Iqbal and Twombly, then it could proceed. Well, that — the Iqbal-Twombly problem is one of the problems. But, no, it's not the only problem. It would — these individual claims have other problems, too, that I'm about to get to. So are you making a distinction between these, quote, unquote, individual claims on the one hand and the ex — I mean, the ex parte young is an individual claim where there's a legal fiction, right? Why do you keep saying that an ex parte young claim is not an individual capacity claim? I'm trying to distinguish between the various theories that the appellants have for why these claims ought to be — ought to be permitted — ought to be permitted into court, that they have their explanation for why ex parte young are appropriate. And then, I mean, there are — there's case law specifically with regard to individual capacity claims. The analysis — the Supreme Court case law that applies to the concept of individual capacity claims and the concept of ex parte young claims deals with those doctrines somewhat differently. That's the only distinction. That's the only categorization I'm trying to make. It — What's an individual capacity claim against a State official that's not an ex parte young claim? Well, I — I think the kind — the — it — the DPPA certainly does contemplate private individual capacity claims against someone who — who has acted — I guess a police officer, for example, who has — who has gone into the DMV driver's license database to — to find information out about a significant other or a — or an ex-spouse for the purpose of attacking that person or stalking that person. That would not be an ex parte young claim, or very likely it wouldn't be an ex parte young claim. I'm trying to understand this myself. So if there had been an allegation here that the individual — the defendant, setting aside an individual, had taken information from the data — the State databases and sold them on the dark web, which we talked about this morning, would that allegation be an ex parte young claim? I think ex parte — ex parte young certainly would be the response to the argument that those claims are — are barred by the Eleventh Amendment if — if that — But is there a viable individual claim, as you're using the term, against them in their individual capacity as well?  I don't think it's necessary to divide those things analytically. But the — the district court's decision and — and the — the — You're doing it. That's why we're trying to understand it. Okay. I — I — You're dividing them analytically. You're saying you can't bring an ex parte young claim, but then you're saying we have to address the merits of the allegations under Iqbal and Twombly because they're so-called individual capacity claims. Well, the — the plaintiffs in this case have — have stated what they describe as both official capacity claims and individual capacity claims. And they have — Individual capacity claims are barred by the Eleventh Amendment. Right. We know that. An individual capacity claim can proceed under ex parte young in certain situations. That's correct. You're saying in this statute, or in this scenario, you can't proceed under ex parte young. That's correct. Because the DPPA is a remedial scheme.  Then you're saying they claim that Simon and Maida did something wrong in paragraph 220, and we have to analyze that under Iqbal and Twombly because that's a so-called individual capacity claim. Why is that a separate issue? Why isn't — why isn't 220 barred because ex parte young is unavailable here? It is. That's — that's correct. These — these are multiple alternative reasons why. These are a stack of reasons why the claims in this case do not meet the jurisdictional prerequisites for Federal jurisdiction. So in your mind, if we agree with you that ex parte young is unavailable under Seminole Tribe and the other cases, case over in your mind? Yes, I think so. Yes. But you wouldn't have to agree with us on the ex parte young — on the specific ex parte young exception and analysis. Because you — because even in that case, the claims that they are trying to state and they are trying to direct specifically at Mr. Maida and Mr. Simon fail the Twombly test, and then — But you're saying that there are some claims that are individual capacity claims that are available under this statute. Yes. For example, the police officer example.  So is there anything like that alleged here? No. And the main reason for that is that both Mr. Simon and Mr. Maida are State officials. Police officers, generally speaking, are employees of municipal departments. All right. Even if they could get around the Twombly problem, appellants would still be left with a core fact that this lawsuit is an attack on two Minnesota statutes, and so on the decisions of the Minnesota legislature rather than on the individual conduct of anyone in particular. And what the Pennhurst and Coeur d'Alene Tribe cases say is that the general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain or interfere with the public administration or if the effect of the judgment would be to restrain the government from acting or to compel it to act. So though the appellants attempt to characterize these claims as directed against these two men, it is manifest in this 220-some-paragraph-long complaint that what it actually is is an attack on these Minnesota statutes. And so those are the jurisdictional problems. Now, I do want to address counsel's statement that there are two State statutes that authorize this disclosure, and he thinks there is some portion of the disclosure that is not supported by those two statutes. The two statutes he cited were MnSTAT 171.12 and 201.13, both of which are very relevant and very important to this case. But there's a third one, and that's MnSTAT 201.091, Subdivision 4, which we've cited in our brief, that provides the Secretary of State with discretionary authority to disclose portions of what's called the public information list, that's a portion of the State voter registration database, or other information from that database for purposes related to elections. And that, that is part of the authority that he has exercised and the Secretary of State's office has exercised in this case. So counsel's argument that this disclosure is not authorized by Minnesota law, I should say that argument, which is a little new to me, I didn't really see that in their filings, it seems to me to have problems with Pennhurst. One of the central holdings in Pennhurst is you can't sue States in Federal Court for violating, allegedly violating State law prohibitions. But in any case, on its merits, that claim is incorrect because of 201.091. I did just want to say a few words about the merits, because even if the Court were to disagree with us that Federal courts have no jurisdiction over these claims, these claims on the face of the DPPA fail as well. The DPPA explicitly authorizes the data disclosure here in two different ways. First, it permits the driver's license data to be used by, quote, any private entity acting on behalf of a State or local agency in carrying out its functions. Indisputably, that's what's going on here when Minnesota contracts with ERIC to do work relating to voter registration and the registration database. The Secretary's office and the county election offices that work with OS, OSS, that's the Secretary's office, have specific duties and powers set out by Minnesota law. So sharing this information with ERIC is exactly the kind of use that that provision of the DPPA permits. Appellants have a couple arguments to the contrary, that supposedly what ERIC does is barred by Federal law, but neither of those is act — but their arguments on those points are not actually supported by any legal authority. The idea that States are not allowed to engage in voter registration drives is entirely unfounded in the law, and the notion that the Help America Vote Act, HAVA, bars States from sharing this kind of data is once again unfounded in the actual text of HAVA. So I'm happy to answer any other questions that the Court may have, but absent such questions, for the reasons I've described, Appellees respectfully request that the Court affirm the decision below dismissing this action for lack of jurisdiction. In the alternative, we would ask that the Court dismiss the action — dismiss on the merits or order this Court to dismiss on the merits because appellants have failed to state a claim under the DPPA for which relief can be granted. Thank you. Thank you for your argument. We have only a few seconds remaining, Mr. Cardall, but you may use them if you wish. I find it somewhat amazing, this reference to 201.091, when I actually read to the Court 171.12 subdivision 7, which stated that the data — the driver data will be treated according to the DPPA. So it's really quite absurd to claim that as legal authority. Finally, a natural reading of the jurisdictional statute, the DPPA 2724, would be that you can't sue States for damages, but you can sue State employees if they're violating the DPPA for injunctions. Thank you. Very well. Thank you for your argument.